Case number 25-1072, Cary Reinhardt v. Weston Prince. Oral argument not to exceed 15 minutes per side. Mr. Seuss, you may proceed for the appellant. Good morning, Your Honors. Matthew Seuss, Attorney with Legal Services of Eastern Michigan, here on behalf of the appellant, Cary Ann Reinhardt. I'd like to reserve three minutes for rebuttal. Your Honors, the issue today ultimately is an issue of statutory interpretation. 11 U.S.C. 547 B-5 states that as an element of a preferential transfer claim, a plaintiff must prove that the alleged transfer enabled a creditor to receive more than the value of their petition date claim in a hypothetical Chapter 7 liquidation in which the transfer had not occurred. The precedent of this Court and of the Supreme Court of the United States of America are clear on this issue that when the terms of a statute are unambiguous, the common meaning of the terms within the statute must guide the Court's interpretation of that statute. So in this case, we're looking at the phrase, more than. The common meaning of that phrase is quite simple. The 7 more than 6 is... Yeah, but can you... Sorry. Go on. Can you address whether the transfer occurred within 90 days of the petition? Yes, I can address that question. So Your Honor, at the end of the day, the question is, when was that transfer perfected in accordance with 547E, in which case a transfer is perfected when no other interest can acquire a superior interest or superior lien. And when we're looking for that, we have to look at the statute and determine when property interests are transferred under MCL 21178K, which makes it clear. And also the judgment in this case make it clear that no property interest transfer until those redemption rights expire on March 31st, 2022. And that's the statutory right of redemption, not what we would think of as an equitable right. Well, Your Honor, an equitable right of redemption, in my understanding of Michigan law, is a redemption right that exists up until a judgment becomes effective, and then typically you have a statutory redemption period, like in mortgages, you have a statutory redemption period that runs afterwards, where the homeowner only has that right to redemption, they lose all the other rights to their property. In this case, that judgment does not become effective until March 31st, 2022. So this is an equitable redemption period up until that date, because no transfer of rights or any interest in a county treasurer has occurred until the end of the close of business day. I mean, there's a judgment in February, but my understanding is the deed doesn't transfer until March, is that right? There's no deed. They can't take possession of the property. They cannot take, that is explicit in the statute. They cannot take any possession of the property. So your client had possessory interest and a right to redeem until March 31st, is that right? On March 30th, they could have sold the house to a bona fide purchaser and paid the taxes as part of their closing. That bona fide purchaser would have full interest in the house, not subject to anything. Up until that March 31st, the county treasurer still only has a right to payment for its taxes. They wouldn't have been subject to that judgment, to the tax delinquency, a bona fide purchaser? The bona fide purchaser on March 30th, let's say they sell it to a bona fide purchaser and don't redeem the taxes, that bona fide purchaser still has a fee simple interest in the property. They can occupy it. The county treasurer cannot. Yes, it's still subject to that lien, which if it's not paid by the end of the day on March 31st, they could lose the property. That judgment becomes effective. But up until that date, that judgment does not become effective. And Judge Opperman, I believe, ruled correctly on that issue. That issue was also previously ruled on in NREA RL Management Group. This was a case that's not mentioned in my briefing, because unfortunately- What about the Oregon case that your opponent cites? The Oregon case? NREA Hall, maybe? No, no. He doesn't. That's not an Oregon case. This is a Michigan case. NREA RL Management Group is a- I'm talking to you. Oh. So sorry. In any event, the 90-day provision, I thought the bankruptcy judge said that there had been an agreement that the parcels could not transfer until March 31st. Well, and that was an element of Judge Opperman's decision, is on the record, counsel for the county treasurers are working out payment plans on these debts. And in some cases, those payment plans aren't even completed until months, years after March 31st, during which time that homeowner still owns their property, still possesses all the rights with them. So to get back to where you started, you say that Section 5 of 547B is clear. In a sense, it's clear, but in a sense, it's very complicated because it says, enable such creditor to receive more than such creditor would receive if the case were under Chapter 7. So we have to figure out how much the creditor is receiving as a result of this transaction approach versus the hypothetical Chapter 7. So why do you think there would be more than? Your Honor, it's a stipulated fact that on the petition date, June 10th, 2022, the treasurer's claim against Ms. Reinhart would have been $5,844.80. So if this transfer in any way gives or enables the county treasurer the power to receive more than that $5,844.80, then this element is satisfied. And there are multiple different ways in which the county is enabled to do so. I think the most simple analysis and what most complies with Palmer Clay and Enrightenna is to conduct the analysis on that June 10th date, in which time we're comparing $5,844.80 with a home that's worth $76,700. She filed her claim for the excess proceeds, which she is allowed to do under the 2020 statute. Are you saying she did not file her claim by whatever date you just referenced? So the Michigan's tax foreclosure scheme has multiple steps in which a claimant must take to preserve their interest in remaining proceeds. And so, yes, yes. Remaining proceeds. There's an important difference. So she did exercise her rights to the excess proceeds, did she not? So as of... Did she? Yes or no? Yes, yes. As of this date, what she filed was a notice of intention to make a claim for remaining proceeds. All right. And then under the statute, she's authorized to get the excess proceeds, is she not? No. As opposed to Bay County? Not as of this date, no. Oh, now, okay. That's what your argument is, as to a particular date, rather than what the reality is that Bay County is not going to get the excess proceeds. They're not going to get more than their lien. But you say, well, if you look back a few dates before that, maybe as of that date, they wouldn't have. But that ignores the whole statutory scheme, does it not? Your Honor, as of this date, Ms. Reinhart does not have a vested interest in those proceeds. All she has filed, and this is on the face of the form, she has preserved her right to claim those proceeds at a later date. And so the question, ultimately, again, is the treasurer enabled to receive more than their claim? No, they are not, because she's entitled to have her claim be granted, and she gets the excess proceeds. Your argument, you want them to be treated like an unsecured creditor here, rather than a secured creditor. And I don't think that makes any sense at all, because as an unsecured creditor, they would be lumped in with all the other unsecured creditors, and they may not even get their $5,000. No, they're a fully secured creditor. I have never at any point argued anything... Isn't that the purpose of a ruling of a preferential transfer, is that preferential transfer takes the status of a secured creditor and makes it unsecured? Isn't that the way it works? No. No? No. Okay. How does, in practice, does it work if you find a preferential transfer? So the preferential transfer statute was amended in 1978, right? Before 1978, under the older bankruptcy statute, an analysis in which we're looking at creditor classes and determining, you know, have they impacted others within the same class? The analysis focused much more on that, right? And I think there's a good argument that a fully secured creditor, if there are no other fully secured creditors, even if they receive more than 100% of their claim, might not be a preferential transfer, right? However, when it was amended in 1978, and again, this is why I say we must limit our interpretation to the statute, there's no mention of creditor classes. There's no mention of fully secured creditor status. The only question is, have they been able to receive more than the value of their claim? And so... If they go through the tax foreclosure process, my understanding is they're going to get more than $5,800, is that right? There'll be fees, there'll be other things associated with it? So we conducted a... Looking at the sale date, we have the sale dates from the other properties that sold at that time. I estimate a house probably would have sold for about $40,000, and again, by looking at these numbers, we're conducting analysis post-petition date, right? But then, if we go through the process, you might be able to recover the remaining proceeds some time in the following year without any interest, and the county treasurer's still able to recover a 5% sales proceeds on top. On top of the $5,800, they get... On top of the $5,800, plus any and all expenses that they can... That's if the claim... That's if the transfer is not given preferential status treatment and is allowed to go forward, there would be a payment that the treasurer could get of the $5,800 plus 5% plus costs, right? Which is approximately $11,000, hypothetically, right? So there's the minimum bid of what the price... That $11,000, that's would have been what offered in August. But at least it's 5% cost. Yes, so 5% of the sales price at the sale, they're able to recover in addition to the proceeds. And that's if we say it's not a preferential transfer, and therefore the treasurer could keep that asset and do the sale and all of that, whereas under Chapter 7, how much would the treasurer be able to get? $5,844.80. Okay, so the transfer then, the transfer within that 90-day period does result in the treasurer receiving more money than would happen under Chapter 7 bankruptcy. That's the question for the court. And that's what your position is. That's my position is.  Regardless of what happens. How is that different from other security interests? Somebody has a lien, a security interest on a car, and that's a secured creditor, and under that scenario, they're allowed to collect interest, collection costs, attorney fees. That's more than the value of the car too, isn't it? But there's no authority that secured creditors, such as a car lien holder, that their interests are preferential transfers, right? You admit that? I think this is a similar argument to what the district court... Well, sure. However, so we're talking about rights that were gained as a consequence of the transfer in this case. In a hypothetical Chapter 7, in which the transfer had not occurred, there would be no rights to this 5% surplus. There would be no, for 5% of the sales, you know, 5% of the sale price. There wouldn't be any rights to any of these things. All of these new rights that the county treasurer has gained are a consequence of that transfer. These are not agreed to rights as part of a contract, like you would in a car seat. It's statutory, but if we were to rule in your favor, would we not, in effect, be holding that all secured creditors, that their liens are preferential transfers?  Why not? So what's unique about this situation, and what you're not going to see in most situations, is this transfer, before the transfer, they were fully secured for that $5,844.80. But now we're talking about amounts above and beyond that. If we were just talking about expenses, perhaps I would have a tough argument. We're talking about this 5%... I didn't understand. If we were talking about expenses, you would agree that this is analogous to other secured claim holders? I think if we were similar to a mortgage foreclosure, in which a mortgage company would be able to keep their expenses related to the sale, but the homeowner... Would that be a preferential transfer? No. Because the homeowner would immediately be available to recover their proceeds. There's no opportunity for the mortgage company to keep all the proceeds for themselves, or on the other side of it, to keep a 5% sales commission on top. Okay. Is it the 5% sales commission which is the big rub here, as opposed to interest costs and attorney fees, which are allowed for all other secured creditors? I think, at the end of the day, what matters are the values on the petition date. I disagree with you, so if you lose on that argument, then we treat this like all other secured transactions, does that... No. So, the difference is, because those 5%, Judge Moore, you were here and Howard for the oral argument there. We had someone from the Michigan Association of Counties, specifically explaining that that 5% is meant to be an incentive to the counties to get a higher sale price. There's an admission there that that goes above reimbursement for expenses. This is meant to be an incentive for counties to recoup more money, is that 5% sales commission. Bankruptcy Judge Oberman said that it's really equivalent to a real estate commission, and that he saw that the statute really was reasonable and was not more than, because it's basically what they'd have to pay a realtor. So what's wrong with that argument? Realtors earn their percentages. So in BFP, the Supreme Court made very clear that in a forced sale context, you're never going to be able to get market value back, whereas in a Chapter 7 liquidation, the bankruptcy trustee and whatever real estate agent they hire have an obligation to return as much value back to the bankruptcy estate as they can. And so in that situation, instead of perhaps $40,000 that might end up being fully exempt and negatively affecting every other creditor to the estate, you would be able to return something close to the market value of the property, pay off the treasurer in full, pay off PNC Bank in full and other fully secured creditor that lost its rights as a result of the transfer, and every other unsecured creditor would be paid in full using that market value. Can I ask one more question? Yes. Okay. I don't think I got an answer to my question, that if we treat, if we hold that this is a preferential transfer and that the Bay County no longer has a lien, security interest or whatever you want to call it, you say they're not treated like an unsecured creditor? How are they treated? They're treated as a fully secured creditor for their claim that they had before the transfer, which is the $5,844. Okay. So they're still treated as a secured creditor? Yes. For respect to their claim. Then you would just say, so they automatically get their $5,800, but they don't get the cost, attorney fees, interest, and the 5%? Is that the way you say it would work? Well, again, the two points of comparison required by the text of the statute are the present day. Just to answer my question, is that what you say? No. They get their $5,800, but they don't get their cost, interest, attorney fees? No. They gain those rights as a consequence of the transfer. Okay. Well, to answer my question, they don't get those? No. Okay. So you would say they only get the $5,800? I think there's an argument for expenses they incurred prior to the petition date. Okay. They get expenses before the expenses? Before the June 10th, before we file their bankruptcy petition, I think they do that. Isn't that more than the value of the property if they get some expenses before then? The expenses they incurred between the foreclosure date and our petition date, my understanding, are negligible. But, I mean, the argument is if you get one more dime than the lien of $5,800.44, it is more than a creditor would have gotten in Chapter 7, and therefore it's a preferential treatment. I think that's the rule you want to establish. No. I want you to establish the rule that's already there, which is the petition date, the transfer date. All right. Thank you. Okay. Do you have any questions? Thank you. We'll give you your rebuttal time. Thank you. Good morning, Your Honors. May it please the Court. Andrew Thompson on behalf of Weston Prince, the Bay County Treasurer. We're asking this Court to affirm the District Court and the Bankruptcy Court in finding that the lawfully conducted tax foreclosure of appellant's property is not a preference under Section 547B of the Bankruptcy Code. First of all, are we reviewing the Bankruptcy Court decision as opposed to the District Court decision? It's the District Court decision. My apology. We are reviewing the District Court? That's what's on appeal here. I know it's on appeal, but don't we look at the Bankruptcy Court ruling? The District Court issued a separate opinion affirming the Bankruptcy Court. I think the analysis ... This Court could look at the analysis of either. I think the District Court's opinion is succinct and clear and I think gets to the heart of the analysis. You started out saying this is not a preference. Is it because it was not a transfer within the 90 days or is it because it does not meet the more than test in B5? I believe the answer to that. The position we would take is both, although I believe that this Court can decide it solely on the more than test. The bankruptcy judge said that you all had conceded that it was within the 90 days at some point. There was an instance where we filed an admission that it was and then we withdrew that admission and the Bankruptcy Court allowed us to withdraw that admission. You say we can decide it on the more than, so let's get to that. Yes. This statute is written so clearly that we have lots of questions. Enable such creditor to receive more than such creditor would receive if the case were a case under Chapter 7. If it were under Chapter 7, how much would your client receive? If it were under Chapter 7 and we look at the petition date, because I think it's really important that we talk about when this analysis happens. We have the Palmer Clay case and the Tenna case which instruct us that we have to look at the petition date. That date is what? That date is June 10th, I believe, is the date. On that date, there was a stipulation that the value of the treasurer's claim on that date was roughly $5,900 and some change. It's our position that when we look at that, based on what Tenna and Palmer Clay tell us, that we need to look at it as a snapshot. What are the party's interests on that date? On that date, the treasurer has the property, the treasurer's claim is valued at just less than $6,000. On that date, the debtor has her right to remaining proceeds. We know that she has that right on that. The answer to Judge Moore's question then is $5,800? That is correct. That's what you would get under a Chapter 7 liquidation? I would suggest to the court that there would be additional charges that would accumulate after that, such as the taxes for the current year. Roughly $5,800. But approximately $5,800. We have to do the more than, which usually means you compare something to something else. So how much would the creditor get if it were not a Chapter 7, if it were under what you want it to be? So that's what makes this complicated, is the nature of tax foreclosures. They take a long time. In that we have the judgment in February, we have the expiration of the redemption period in March, and then we have the tax sale at the earliest, August. I'm sorry to interrupt, but just to go back to your original point, you said it's a snapshot on June 10th, right? Right. So if I take a snapshot on June 10th, you would have been entitled to $5,800. Instead you're holding the deed to a house that's worth $70,000. So that seems like it's more than, just ipso facto, right there, right? And that's an excellent question. And the answer to that is it's offset by the debtor's right to remaining proceeds at that point. Because the debtor has that right on that date. Because if the debtor didn't have that right, then we'd still have the takings problem articulated by the Michigan Supreme Court right now. So it's not a snapshot. We're looking into the future. We're playing out what's going to happen down the road with the foreclosure, with the $5,800 plus this 5% plus these other fees. I mean, the approximate number is $11,000, right? That's the minimum tax sale number? I think it actually is greater than that now because the legal fee, the treasurer's legal fees... But how much would you have been... Like, if you were doing this analysis on June 11th or whatever, or 10th, how much would you be thinking that you were going to get at the end of the process? $11,000? Approximately. Yeah. Why is that not more than $5,800? The answer is because those additional charges occur after the petition date. And what the Tena case instructs us is we don't take those into account for this test. But you look at what the status quo is after the petition date. But on the date, you're also holding a $75,000 asset. Why do we look after the date at what her rights are, but then we don't look at what you would get after the date? Because she has an offsetting right for remaining proceeds. But not for the $11,000. The $11,000 is what you are entitled to get if the property is sold. She is entitled to the surplus. If the property is sold for $50,000, she can get $50,000 minus $11,000, or $39,000. No, you're absolutely right, Your Honor. So I echo Judge Nabandian's question, why is this not showing that the more than test is satisfied and this was a preferential treatment? And the answer is... Transfer. Preferential transfer. The answer is the right to remaining proceeds, that at the end of the day, the treasurer is only going to get 100% of the value of his claim. Would the treasurer get that under Chapter 7? I thought we said that the Chapter 7 amount was stipulated at $5,900. It's $5,900 as of the petition date. What would happen after that going forward in a Chapter 7 is interest would continue to accrue under the General Property Tax Act up until whatever the sale date when the trustee sells the property. Interest. Yes, interest continues to accrue. Interest continues to accrue under the Bankruptcy Code and pursuant to the General Property Tax Act, it's 1% per month or 1.5% per month, depending on at what point in the foreclosure process they are. And that continues to accrue after the petition date. You also get interest if it's the foreclosure procedure too, right? No, interest stops in the foreclosure procedure. The additional charges that are accrued after that... You don't get interest until the property is sold? I actually don't know that off the top of my head, Your Honor, I apologize. Mr. Thompson, if we were to rule for the plaintiff, would we upset the established law of secured creditors in other instances as lien holders of automobiles or mobile homes and everything else? And the reason I ask this is that Judge Operman said, by an analogy to the right of secured creditors supports defendant's position. Secured creditors are allowed to collect interest, collection costs, attorney fees, associated fees in the agreements in addition to the balances owed. And so if we were to rule in their favor, would we upset the whole law of secured creditors? I think you would, and especially in the context of Michigan tax foreclosures, because I want to go back to... But by analogy, if we say this is more than the claim, then all these secured creditors that are allowed interest, cost, and attorney fees, that's more than two, is it not? Right. You're absolutely right. So those would all be preferential transfers as well. I think the law is very clear that they are not, right? I agree. And the reason is, and I think it gets back to the question Judge Moore asked, what about since we already know that these charges after the petition date are going to get added on, we know the same thing in other secured transactions. We know... But why would you knowingly reduce the value of the estate by $6,000? You don't have to go through this procedure. The trustee can sell it, and you get paid your full claim, and that leaves $6,000 extra for the unsecured creditors. I mean, this is a secured creditor that's vastly oversecured in the asset, right? Which is not the typical bankruptcy situation, right? Fair. So why wouldn't you preserve as much money as possible for the bankruptcy estate? I mean, you're just taking 5% off the top from the estate by foreclosing, right? Why does that make any sense? There's an incentive. The 5%, as Mr. Seuss mentioned, the 5% was put into the statute as an intention, or it's intended to induce the county to engage its best efforts to market the property to sell it. A bankruptcy trustee also has that incentive. They have a fiduciary duty to return value to the estate, right? I mean, I think I'd trust a bankruptcy trustee probably more. I mean, you can bundle the properties when you do the auctions, right? It is permissible under the statute. It is not part of the practice. I mean, that's not really maximizing value, is it? Where treasurers make that decision, and this is not the Bay County treasurer, but where treasurers make that decision, it is done so in an attempt to maximize value, but it's generally not done so where there is a claim for remaining proceeds on any particular property. I don't really understand why you're objecting to this being called a preferential transfer. Because this is a relatively small debt that the county is owed, the asset is relatively large, $70,000 versus a debt of $5,900, and if you say it's a preferential transfer that should be rejected, the asset goes to the bankruptcy estate. The bankruptcy trustee has to engage in its best efforts to sell the property for as much as possible, and you get your $5,900 at the end without any expenses of doing anything. So why are you objecting to it being called a preferential transfer? Going back to this is a lawfully conducted tax foreclosure. There's no allegation in this tax foreclosure that the treasurer did anything wrong. There's no possible principle problem. Oh, I know that, but the preferential transfer provision is just saying if it's done within the 90 days of the bankrupt person declaring bankruptcy, we say that we ignore the transfer, we put the asset into the bankruptcy estate, and the bankruptcy trustee figures out what to do to pay off the creditors. This particular debtor says that in three years she can pay off all of the debts 100%, so everybody's going to get paid, including the unsecured people. The reason, Your Honor, is if this is a preference, every tax foreclosure within 90 days, or every tax foreclosure in which a bankruptcy is filed within 90 days is a preference. If this one's a preference, they're all preferences, because the problem is with the structure of the statute. Is my understanding of bankruptcy law wrong? I really didn't practice in this area. But I thought that if you declared a secured transaction to be a preference, then it no longer became a secured transaction, that it was treated like all other debts, and that secured creditor was treated as an unsecured creditor, and was treated like everybody else. Are you saying that, no, even though it's a preference and you're no longer a secured creditor, you're nevertheless, in Chapter 7, treated by the bankruptcy trustee as a secured creditor, so you get preference over the general creditors? You still get the priority, and that's why there's so few cases where a fully secured first priority lien creditor is considered a preference, because the only time that's considered a preference is when they literally get more. One of the cases cited by Brother Counsel in their brief is a case from Texas called In Re Vila Real, where there was a mortgage creditor who was owed approximately $70,000 on their mortgage, but the property that secured it was a $4 million piece of property. The credit bid submitted by the creditor was the only bid at the foreclosure sale, and so the creditor got the $4 million property for $70,000. In that situation, it was viewed as a preference because the creditor got several thousand percent of their claim by virtue of the foreclosure. Here, the treasurer is only ever going to get 100 percent of their claim as determined by the statute, what the statute says their claim is. The treasurer is only going to get 100 percent. The treasurer is never going to get 150 percent. You're not going to get $11,000. You're going to get 5,900. The treasurer is going to get 100 percent of his claim as determined by the statute. The statute says these charges can be added. We don't take them into account on the more than test because these charges are later than the petition date, which is what TENA tells us to do. In the TENA case, the ... Counselor. Do you want me to finish? If you look at TENA, this will all become clear. Sort of. Your red light is on, so I think that's a good way to end. Thank you, Your Honor. Thank you. Counsel, what's your best authority that this is a preferential transfer? Your Honor, I would say, well, if you look at TENA, all will become clear.  Why didn't we do that? I do believe the two cases, the In re Tucker cases from Maryland are very instructive on a lot of the issues on this case. Okay. Are they mortgage foreclosure cases? They are also tax foreclosure cases. Actually, it's not apples to apples, but it's a similar scheme where the homeowner does have a right to remaining proceeds after the tax sale. Those courts, they acknowledge that right, didn't even address it as an issue for the  It's also a situation where, especially in the bankruptcy court, where there was an argument that a fully secured creditor cannot receive preference. I'd say those cases are particularly instructive, but yes, In re TENA is a beautiful case because, and in Palmer Clay, because again, I have to harp on it again, the petition date is such, the reason it's so important as a measure for preferential transfers is because that shows you what the impact is going to be on the other creditors to the state. The ultimate policy goal of 547 is equality of distribution amongst the creditors. But I did, Judge Griffin, I did want to- You want us to pretend that there is no right to the excess proceeds because you want us to lock in on a particular date and ignore the reality of the situation. I don't think that's a particularly good argument. I think maybe your better argument is this 5% interest attorney fees. So my argument isn't an alternative, but I did want to address your question from before. I would say for what expenses may be charged if the transfer is avoided, I would say probably the answer is I don't know. I know that they would be treated as if, you know, the transfer had not occurred. But for the purposes of determining whether a transfer has occurred, what we consider is what was in existence on June 10th. But- We'll figure that out. Yeah. But as for, you know, I do want to address this whole argument about these future interests, you know. The county treasurer is essentially saying this isn't a preference. They gained a right to the remaining proceeds. However, there's, you know, there are exceptions to preferential transfers within the statute in 547C. What they're offering does not fit any of the definitions of the exceptions of preferential transfers within the statute. Congress went out of their way to specifically identify exceptions. This does not fit because it's so contingent and because it does not equate to the value lost as a result of the transfer. It never can. And so if the court were to entertain that type of analysis, you have to understand the larger impact on every preferential transfer lawsuit that could have, where every creditor could say, well, we gave them an interest back. It's contingent. It's unliquidated. But, you know, they've got- As a result, it's not a preferential transfer. I mean, think about Chapter 11 cases where you're dealing with multiple preferential transfer lawsuits with one creditor. But just addressing- Oh, I'm over my time. I want to- You are. Sorry. But I wanted to address your bundling question, but that's fine. So thank you all for your time and for the reasons stated on the record. We ask that you reverse the decision of the district court. Thank you both for your argument, and the case will be submitted.